## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

MICHELLE ANNE STROMGREN,

      Plaintiff,

v.                                 Case No. 3:21-cv-908-MCR/MJF

KILOLO KIJAKAZI,

      Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff Michelle Anne Stromgren brings this action under 42 U.S.C. § 405(g) to seek review of a final adverse decision of the Commissioner of the Social Security Administration. Because the Commissioner did not apply the proper legal standards, the District Court should reverse the Commissioner's decision and remand this action for further proceedings.[1]

### I. PROCEDURAL HISTORY

On June 10, 2019, Plaintiff applied for disability insurance benefits ("DIB"). In her application, Plaintiff alleged that she became disabled on December 21, 2018.

---

[1] The District Court referred this case to the undersigned to address preliminary matters and to make recommendations regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2; *see also* 28 U.S.C. § 636(b)(1)(B)-(C); Fed. R. Civ. P. 72(b).

Tr. 251.[2] The Social Security Administration ("SSA") denied her claim initially and on reconsideration. Tr. 113-52. On November 9, 2020, Plaintiff, represented by counsel, appeared and testified telephonically during a hearing before an Administrative Law Judge ("ALJ"). Tr. 34-60. On December 10, 2020, the ALJ issued a written decision in which she found that Plaintiff was not disabled. Tr. 18-27. The Appeals Council denied Plaintiff's request for review. Tr. 1-7. Thus, the ALJ's decision stands as the final decision of the Commissioner, subject to review in this court. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1262 (11th Cir. 2007). This appeal followed.

## II. FINDINGS OF THE ALJ

In denying Plaintiff's claim, the ALJ made the following findings:

1.  Plaintiff met the insured-status requirements of the Social Security Act ("the Act") through December 31, 2023;

2.  Plaintiff had not engaged in substantial gainful activity since December 21, 2018, the alleged disability-onset date;

---

[2] All references to "Tr." refer to the transcript of the Social Security Administration record filed on November 17, 2021. Doc. 9. The page numbers cited herein are those found on the bottom right corner of each page of the transcript, rather than the page numbers that were assigned by the court's electronic docketing system.

3.     Plaintiff had the following severe impairments: complex regional pain syndrome ("CRPS"), osteoarthritis, and degenerative disc disease of the cervical spine;

4.     Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments;

5.     Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b) except

> no climbing ladders, ropes, or scaffolds; occasional climbing of ramps and stairs, stooping, kneeling, and crawling; frequent balancing; avoid concentrated exposure to vibrations, unprotected heights, and moving machinery.

6.     Plaintiff was able to perform past relevant work as a medical-voucher clerk and medical assistant; and

7.     Plaintiff was not disabled, as defined in the Act, from December 21, 2018, through the date of the decision. Tr. 20-26.

### III. STANDARD

A court's review of the Commissioner's final decision is limited. A court may not "decide the facts anew, reweigh the evidence, or substitute its judgment for that of the [Commissioner]." *Simon v. Comm'r, Soc. Sec. Admin.*, 7 F.4th 1094, 1104 (11th Cir. 2021) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)). Instead, a court reviews to ensure that the Commissioner's decision is

supported by substantial evidence in the record and was a result of the application of proper legal standards. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). If so, a court cannot disturb the Commissioner's decision. 42 U.S.C. § 405(g); *Falge v. Apfel*, 150 F.3d 1320, 1322 (11th Cir. 1998); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). The threshold for the evidentiary sufficiency in Social Security cases is not high. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). Although substantial evidence is "more than a mere scintilla," it is not a preponderance; it requires only "such relevant evidence as a reasonable mind would accept as adequate to support a conclusion." *Id.*; *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Even if the evidence preponderates against the Commissioner's decision, the decision must be affirmed if it is supported by substantial evidence. *Sewell v. Bowen*, 792 F.2d 1065, 1067 (11th Cir. 1986).

Pursuant to 20 C.F.R. § 404.1520(a)-(g),[3] the Commissioner analyzes a disability claim in five steps:

1.    Is the individual currently engaged in substantial gainful activity?

2.    Does the individual have any severe impairments?

---

[3] Generally, the same legal standards apply to claims for DIB and supplemental security income ("SSI"), but separate parallel statutes and regulations exist for DIB and SSI claims. *See* 20 C.F.R. §§ 404, 416. Thus, citations of statutes or regulations found in quoted court decisions in this report and recommendation should be considered to refer to the appropriate parallel provision.

3.    Does the individual have any severe impairments or combination of impairments that meet or equal those listed in 20 C.F.R. Part 404?

4.    Does the individual have the RFC to perform work despite limitations and are there any impairments that prevent past relevant work?

5.    Do the individual's impairments prevent other work?

The claimant bears the burden of establishing a severe impairment that keeps her from performing past relevant work. *Id.* § 404.1512; *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1278 (11th Cir. 2020) ("A claimant bears the burden at the first four steps."). If the claimant establishes such an impairment, the burden shifts to the Commissioner at Step Five to show the existence of other jobs in the national economy that, given all of the claimant's impairments, the claimant can perform. *Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1321 (11th Cir. 2021). If the Commissioner carries this burden, the claimant then must prove that she cannot perform the work suggested by the Commissioner. *Goode*, 966 F.3d at 1279; *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987).

## IV. PLAINTIFF'S MEDICAL HISTORY AND HEARING TESTIMONY

### A.    <u>Relevant Medical History</u>

Between October 2017 and July 2020, Plaintiff reported pain in various locations. She reported pain in her hands and feet. Tr. 587, 627, 639, 654, 664, 670,

674, 678, 700, 712, 715, 718, 767, 804, 810, 818, 824, 848, 856, 864.[4] She also

reported pain in her legs and arms. Tr. 553, 587, 633, 639, 670, 674, 705, 709, 746,

804, 810, 824, 848, 856. In 2017, medical sources noted that Plaintiff did not appear

to be in distress at her appointments. Tr. 710, 713, 716, 719. But beginning in

February 2018, Plaintiff's medical sources frequently noted that Plaintiff appeared

to be in mild to moderate pain. Tr. 592, 630, 635, 641, 646, 651, 656, 672, 676, 680,

682, 685, 702, 706, 741, 748, 813, 821, 827, 835, 851, 859, 867, 893. But even after

February 2018, there were instances when Plaintiff did not appear to be in distress.

Tr. 611, 617, 791, 807.

  At her medical appointments, Plaintiff frequently described her pain as

constant, sharp, throbbing, burning, and shooting. Tr. 590, 627, 633, 639, 644, 649,

654, 670, 674, 678, 700, 705, 709, 712, 718, 746, 767, 804, 810, 818, 824, 848, 856,

864, 890, 918. Sometimes she described the pain as severe. Tr. 633, 639, 644, 649,

654, 700, 705, 709, 712, 718, 746, 810, 864, 890, 918. Sometimes she described the

pain as moderate. Tr. 553, 590, 627, 670, 674, 678, 715, 767, 804, 810, 818, 824,

848, 856. Other times, Plaintiff reported that her pain radiated to other parts of her

---

[4] A plaintiff pursuing a DIB claim must show that she was disabled on or before the date last insured. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam). The undersigned, therefore, summarizes only the record evidence on or around December 21, 2018—Plaintiff's alleged disability-onset date—through December 31, 2023—the date through which she satisfies the insured-status requirements.

body. Tr. 633, 639, 674, 705, 709, 712, 767, 804, 810, 824, 856, 864. On still other occasions, Plaintiff reported that her pain did not radiate. Tr. 644, 649, 654, 670, 700, 715, 746, 818, 848, 890. Plaintiff's reports of pain were often accompanied by reports of numbness and tingling in the affected areas. Tr. 590, 670, 674, 700, 705, 709, 712, 715, 718, 767, 804, 818, 864, 890.

Plaintiff's pain fluctuated between 6/10 and 8/10. Tr. 553, 590, 627, 633, 639, 644, 649, 654, 674, 670, 678, 705, 709, 712, 746, 759, 767, 804, 810, 818, 824, 848, 856, 864, 890, 918. Plaintiff's average weekly pain generally fluctuated between 7/10 and 9/10, and her pain increased to 9/10 or 10/10 with activity. Tr. 590, 627, 633, 639, 644, 649, 654, 670, 674, 678, 705, 709, 712, 746, 767, 804, 810, 818, 824, 848, 856, 864, 890, 918.

Plaintiff frequently reported that her pain negatively affected her ability to perform many activities, such as walking normally, sitting comfortably, standing up straight, falling asleep, staying asleep, performing chores, lifting objects, and typing. Tr. 590, 627, 633, 644, 649, 654, 670, 674, 678, 700, 705, 709, 712, 715, 718, 746, 755, 767, 804, 848, 864, 890. Plaintiff also reported that her pain worsened with movement and when sitting and that the weather affected her pain. Tr. 590, 627, 633, 639, 644, 649, 670, 674, 678, 700, 705, 709, 712, 715, 718, 746, 767, 864, 890, 918.

Between October 2017 and July 2020, Plaintiff's gait fluctuated. Sometimes Plaintiff's gait was normal. Tr. 612, 618, 711, 714, 716, 720, 761, 792, 797, 807. At

other times, however, Plaintiff had a mildly wide-based gait. Tr. 592, 630, 636, 642, 646, 651, 656, 662, 667, 672, 676, 680, 685, 689, 702, 707, 742, 749, 756, 770, 821, 835, 843, 848, 859, 867, 872, 893.

Generally, Plaintiff's muscle strength was 4/5 on her right side and 5/5 on her left side. Tr. 593, 630, 636, 642, 646, 651, 656, 662, 667, 672, 676, 680, 685, 689, 702, 707, 711, 714, 717, 742, 749, 770. But beginning in September 2019, Plaintiff's muscle strength was 5/5 overall, with the exception that Plaintiff's hand grip was 4/5 on both sides. Tr. 807, 813, 821, 827, 835, 843, 893. Plaintiff's medical sources frequently noted that Plaintiff's muscle tone was normal overall.[5] Tr. 593, 630, 636, 689, 702, 707, 742, 749, 770, 813, 821, 827, 835, 843, 893.

On average, Plaintiff reported that her treatment plan decreased her pain by 50%. Tr. 590, 627, 633, 639, 644, 649, 674, 678, 705, 709, 715, 746, 767, 810, 824, 848, 856, 864, 890, 918. According to Plaintiff, the pain relief was enough to make a real difference in her life, and medical practitioners opined that Plaintiff's pain relief was "clinically significant." Tr. 590, 627, 633, 639, 644, 649, 674, 678, 746, 767, 810, 824, 848, 856, 864, 890, 918. They also found that Plaintiff's CRPS often was stable. Tr. 636, 647, 743, 750, 771-72, 828-29, 837, 844, 852-53, 860-61, 868,

---

[5] In July and September 2018, Plaintiff's medical source noted mild atrophy in Plaintiff's right calf. Tr. 676, 680.

895. There were instances, however, when Plaintiff's medical sources found that Plaintiff's CRPS was worsening. Tr. 642-43, 815.

**B.    Summary of the Hearing Testimony[6]**

At the hearing conducted by the ALJ, Plaintiff testified that her pain was constant.[7] Tr. 46. On a normal day, Plaintiff's pain in her lower extremities was "off the chart." Tr. 51. After she took her medication, Plaintiff's pain was 7/10 or 8/10, and although her pain varied from minute to minute, Plaintiff experienced those levels of pain every day. Tr. 46, 50-51. Plaintiff testified that she experienced "burning, stinging, [and] stabbing pain." Tr. 46. Plaintiff testified that her "feet stay ice cold." Tr. 47.

Plaintiff's CRPS also impacts her upper extremities. Plaintiff experiences numbness in her fingers, so she has a hard timing manipulating things with her fingers. Tr. 52. Plaintiff testified that as a result of the numbness, she has dropped pens, pots, pans, and bowls. *Id.* Plaintiff testified that she can write for up to five

---

[6] The undersigned summarizes only the hearing testimony directly relevant to the issues raised by Plaintiff on appeal.

[7] In a supplemental pain questionnaire submitted to the SSA on June 14, 2019, Plaintiff stated that her pain "is 24/7 – It never stops." Tr. 299. Plaintiff elaborated further: "Chronic severe pain, sharp shooting, numbness & tingling, deep bone pain severe constant, debilitating, severe burning pain that <u>never</u> stops <u>constant</u> <u>burning</u> & <u>stinging</u> like I am on fire, bone crushing, legs & feet feel super heavy, & really tight constantly." Tr. 298 (grammatical and punctuation errors in the original); Tr. 301-02. Plaintiff stated that she felt this pain in all four extremities. Tr. 298.

minutes before her hand begins "throbbing[,] burning[,] and tingling." Tr. 53. Plaintiff requires a twenty- to thirty-minute break before she can write for another five-minute period. *Id.*

Although Plaintiff testified that she can stand for only "about ten minutes" before she must sit down, that limitation stemmed from Plaintiff's "medical problems" generally, not solely Plaintiff's CRPS. Tr. 54. After ten minutes of standing, Plaintiff's feet are in pain, "sensitive, swollen, [and] inflamed." Tr. 55. Plaintiff testified that she requires a thirty-minute break before she can stand for another ten-minute period. *Id.* Plaintiff testified that she cannot walk the distance of a city block. *Id.*

Plaintiff lies prone and sleeps to relieve her pain. Tr. 47. Plaintiff testified that she remains in bed for approximately sixteen hours per day. Tr. 47-48. Plaintiff also testified that she sleeps 50% to 60% of the day. Tr. 52.

Plaintiff stated that her CRPS "slightly" impacts her ability to do chores around the house. Tr. 49. As a result, her husband and daughter help her. *Id.* Plaintiff testified that she no longer goes grocery shopping because it requires "too much walking," and she does not cook dinner every night. Tr. 49, 55-56. Plaintiff testified that she is able to do laundry for twenty to thirty minutes before she needs to take a break, which consists of Plaintiff lying prone from one to one and one-half hours. Tr. 49-50. Chores, according to Plaintiff, make her "really, really tired." Tr. 49.

## IV. DISCUSSION

A.    **Plaintiff's Subjective Symptoms of Pain**

Plaintiff first argues that the ALJ erred in discounting Plaintiff's subjective symptoms of pain caused by CRPS, in light of the SSA's rulings in Social Security Ruling ("SSR") 03-2p and SSR 16-3p. Doc. 14 at 7-11.

In determining whether a claimant is disabled, the Commissioner considers all of the claimant's symptoms, including pain, "and the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(a). The Eleventh Circuit has established a three-part test for evaluating a claimant's testimony regarding subjective complaints of pain and other symptoms. *Foote*, 67 F.3d at 1560; *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (per curiam). The claimant "must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing *Holt*, 921 F.2d at 1223); *Foote*, 67 F.3d at 1560; *see* 20 C.F.R. § 404.1529(a).

If the record shows that the claimant has a medically determinable impairment that could reasonably be expected to produce her symptoms, the ALJ then must

"evaluate the intensity and persistence" of the claimant's symptoms to determine how, if at all, the symptoms limit the claimant's capacity for work. 20 C.F.R. § 404.1529(c)(1); *see Strickland v. Comm'r of Soc. Sec.*, 516 F. App'x 829, 831 (11th Cir. 2013) ("If the record shows that the claimant has a medically-determinable impairment that could reasonably be expected to produce her symptoms, the ALJ must evaluate the intensity and persistence of the symptoms in determining how they limit the claimant's capacity for work."); *Jarrell v. Comm'r of Soc. Sec.*, 433 F. App'x 812, 814 (11th Cir. 2011) (noting the ALJ must consider "all evidence, including subjective statements about the intensity, persistence, and functionally limiting effects of pain . . . [as well as] the objective medical evidence").

In doing so, the ALJ evaluates "all of the available evidence from [the claimant's] medical sources and nonmedical sources" about how the symptoms affect the claimant. 20 C.F.R. § 404.1529(c)(1)-(2); *see Strickland*, 516 F. App'x at 831. The ALJ also considers other factors: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) any precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of the claimant's medication; (5) any treatment other than medication the claimant received for pain relief; (6) any measures the claimant used to relieve her pain or symptoms; and (7) other factors concerning the claimant's

functional limitations and restrictions due to her pain or symptoms. 20 C.F.R § 404.1529(c)(3); *Strickland*, 516 F. App'x at 831-32.

After considering all of the evidence, the ALJ must determine whether there are any inconsistencies between the claimant's subjective testimony about her symptoms and the rest of the evidence. 20 C.F.R § 404.1529(c)(4); *Strickland*, 516 F. App'x at 832. If there are inconsistencies, the ALJ can discredit the claimant's subjective testimony of pain or other symptoms, because "credibility determinations are the province of the ALJ." *Moore*, 405 F.3d at 1212. But the ALJ must "articulate explicit and adequate reasons" for discrediting a claimant's testimony, unless the bases for the ALJ's credibility determination are obvious from the record. *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991); *Foote*, 67 F.3d at 1562 ("If proof of disability is based upon subjective evidence and a credibility determination is, therefore, crucial to the decision, the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding.") (citation and internal quotation marks omitted).

The ALJ's decision to discredit the claimant's testimony is reviewed for substantial evidence. *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992) (per curiam). "While the ALJ does not have to cite to particular phrases or formulations, broad findings that a claimant was incredible and could work are, alone, insufficient for [the court] to conclude that the ALJ considered the [plaintiff's] medical condition

as a whole." *Strickland*, 516 F. App'x at 832 (citing *Foote*, 67 F.3d at 1562); *see Deborah M. v. Saul*, 994 F.3d 785, 788 (7th Cir. 2021) (noting that an ALJ need not "discuss every piece of evidence in the record and is prohibited only from ignoring an entire line of evidence that supports a finding of disability") (citation omitted); *Miles v. Comm'r of Soc. Sec.*, 652 F. App'x 923, 926 (11th Cir. 2016) ("The ALJ is not required to discuss every piece of evidence so long as the decision does not broadly reject the claimant's case and the decision is sufficient for a reviewing court to conclude that the ALJ considered the claimant's medical condition as a whole."). Absent articulated reasons for discrediting the claimant's subjective-symptoms testimony, this court must, as a matter of law, accept the claimant's testimony as true. *Brown*, 921 F.2d at 1236 (citing *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988)).

Plaintiff has CRPS. Tr. 21. CRPS is a term "used to describe a constellation of symptoms and signs that may occur following an injury to bone or soft tissue." SSR 03-2p Titles II and XVI: Evaluating Cases Involving Reflex Sympathetic Dystrophy Syndrome/CRPS, 68 Fed. Reg. 59971, 59972 (Oct. 20, 2003). "CRPS patients typically report persistent, burning, aching[,] or searing pain that is initially localized to the site of the injury." *Id.* "The degree of reported pain is often out of proportion to the severity of the precipitating injury[,] . . . [and c]ases have been reported to progress and spread to other limbs, or to remote parts of the body." *Id.*

The ALJ evaluates a claimant's CRPS "using the sequential evaluation process, just as for any other impairment." *Id.* at 59975. When determining a claimant's RFC, "[c]areful consideration must be given to the effects of pain and its treatment on an individual's capacity to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." *Id.*

Here, the ALJ found that Plaintiff's medically determinable impairments, including CRPS, could reasonably be expected to cause Plaintiff's alleged symptoms. Tr. 24. The ALJ also found, however, that Plaintiff's alleged symptoms were not entirely consistent with the record evidence. *Id.*

Plaintiff argues that the ALJ erred by discounting Plaintiff's reported pain caused by CRPS. Doc. 14 at 7-11. Plaintiff contends that in discounting Plaintiff's reported pain, the ALJ relied only on a lack of objective medical evidence of Plaintiff's pain. *Id.* at 10. In doing so, Plaintiff asserts that the ALJ's reliance violates SSRs 03-2p and 16-3p. SSR 16-3p prohibits the Commissioner from "disregard[ing] an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate the degree of impairment-related symptoms alleged by the individual." SSR 16-3p Titles II and XVI: Evaluation of Symptoms in Disability Claims, 82 Fed. Reg. 49462, 49465 (Oct. 25, 2017).

The Commissioner, on the other hand, asserts that although the ALJ considered objective medical evidence in the record, the ALJ did not rely solely on that evidence in discounting Plaintiff's subjective complaints. Doc. 15 at 9. According to the Commissioner, the ALJ also considered the conservative nature of Plaintiff's treatment and the stability of Plaintiff's condition. *Id.* at 9-10. The Commissioner contends that the ALJ properly evaluated Plaintiff's CRPS under SSRs 03-2p and 16-3p. *Id.* at 11-12.

The record indicates that the ALJ discredited Plaintiff's reported pain because Plaintiff exhibited either a mildly wide-based gait or a normal gait at her appointments. Tr. 25; *see* Tr. 592, 612, 618, 630, 636, 642, 646, 651, 656, 662, 667, 672, 676, 680, 685, 689, 702, 707, 711, 714, 716, 720, 742, 749, 756, 761, 770, 792, 797, 807, 821, 835, 843, 848, 859, 867, 872, 893. The ALJ found that this undermined Plaintiff's claims that she is unable to walk the length of a city block.[8] Tr. 25.

The ALJ also discredited Plaintiff's subjective symptoms because, although Plaintiff exhibited reduced strength in her upper extremities, her strength was reduced only to 4/5 and that reduction presented most frequently in Plaintiff's right side. *Id.*; *see* Tr. 593, 630, 636, 642, 646, 651, 656, 662, 667, 672, 676, 680, 685,

---

[8] Although Plaintiff's lack of a prescribed assistive device is not "objective medical evidence," the ALJ also found that this undermined Plaintiff's alleged walking limitations. Tr. 25.

689, 702, 707, 711, 714, 717, 742, 749, 770, 807, 813, 821, 827, 835, 843, 893.

Plaintiff's observed gait and muscle strength are objective medical evidence.[9]

Aside from the objective medical evidence discussed above, it is unclear what the ALJ relied on to discredit Plaintiff's testimony regarding her level of pain. The Commissioner argues that the ALJ discussed Plaintiff's conservative treatment and Plaintiff's stability on that treatment. Doc. 15 at 9-10. The ALJ did find that Plaintiff's CRPS was stable in light of her "largely unchanged" prescribed treatment. Tr. 24; *see* Tr. 636, 647, 743, 750, 771-72, 828-29, 837, 844, 852-53, 860-61, 868, 895. The ALJ, however, did not find that Plaintiff's CRPS treatment was conservative; the ALJ noted conservative treatment only in relation to Plaintiff's treatment for psychiatric impairments. Tr. 22. Even if the ALJ had found that Plaintiff's CRPS treatment was conservative, it likely would have been erroneous for the ALJ to discredit Plaintiff's subjective symptoms for that reason. *Winchester v. Comm'r of Soc. Sec.*, No. 6:20-CV-1225-DNF, 2021 WL 4026270, at *6 (M.D. Fla. Sept. 3, 2021) (noting that receiving only conservative treatment "does not

---

[9] "Objective medical evidence" is "signs, laboratory findings, or both." 20 C.F.R. § 404.1502(f). "Signs" includes "one or more anatomical . . . abnormalities that can be observed" and "shown by medically acceptable clinical diagnostic techniques." *Id.* § 404.1502(g). "Signs" do not include a claimant's symptoms, *i.e.*, the claimant's "own description of [his] physical or mental impairment." *Id.* § 404.1502(i). "Laboratory findings" include "one or more anatomical . . . phenomena that can be shown by the use of medically acceptable laboratory diagnostic techniques," including "medical imaging (such as X-rays)." *Id.* § 404.1502(c).

discredit a plaintiff . . . when the individual is suffering from CRPS") (citation omitted); *Channell v. Kijakazi*, No. 2:18-CV-1059-JTA, 2021 WL 3131669, at *7 (M.D. Ala. July 23, 2021) (same). The Commissioner also argues that Plaintiff's subjective complaints are undermined by Plaintiff's "clinically unremarkable behavior at [her] July 2019 psychological consultative exam." Doc. 15 at 11 (citing Tr. 25). There is no indication from the ALJ's opinion, however, that the ALJ relied on Plaintiff's behavior at that July 2019 exam to discount Plaintiff's reported pain.

By failing to discuss fully Plaintiff's reported pain and how it affects Plaintiff's ability to work, as well as relying only on objective medical evidence to discount Plaintiff's reported pain, the ALJ did not comply with SSRs 03-2p and 16-3p. SSR 03-2p, 68 Fed. Reg. at 59975 (requiring that the ALJ give careful consideration "to the effects of pain and its treatment on an individual's capacity to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis"); SSR 16-3p, 82 Fed. Reg. at 49465 ("[W]e will not disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate the degree of impairment-related symptoms alleged by the individual."). Because the ALJ did not apply the proper legal standards, Plaintiff's case should be remanded to the Commissioner to allow the ALJ to consider Plaintiff's CRPS in accordance with SSRs 03-2p and 16-3p.

**B.**  **Plaintiff's Request That Her Case Be Remanded to a Different ALJ**

Because the undersigned is recommending that this action be remanded, the analysis typically should end there. *Washington v. Soc. Sec. Admin., Comm'r*, 806 F.3d 1317, 1323 n.10 (11th Cir. 2015) (declining to address additional issues because the court found that remand was appropriate); *Johnson v. Berryhill*, No. 3:16-CV-92-MSH, 2017 WL 2705965, at *3 (M.D. Ga. 2017) ("The Court having found that remand is required on Plaintiff's second asserted error, the other issues need not be addressed."). Plaintiff argues, however, that any rehearing should be conducted before a different ALJ than the one who adjudicated her case. Doc. 14 at 11-19. Plaintiff asserts that this is necessary because the ALJ that adjudicated her case lacked constitutional authority to do so in light of 42 U.S.C. § 902(a)(3)'s for-cause removal restriction. *Id.* at 19.

The parties agree that section 902(a)(3), the statute authorizing the Commissioner's removal only for cause, is unconstitutional insofar as the statute limits the President's authority to remove the Commissioner. *Id.*; Doc. 15 at 13 (citing Constitutionality of the Commissioner of Social Security's Tenure Protection, 45 Op. O.L.C. __ (2021)). The only issue before the District Court,

therefore, is whether section 902(a)(3)'s unconstitutionality entitles Plaintiff to a hearing before a different ALJ.[10]

A plaintiff seeking relief based on a provision that unconstitutionally limits the President's removal authority, must show that the provision caused the plaintiff "compensable harm." *Collins v. Yellen*, 141 S. Ct. 1761, 1788-89 (2021). That is, the plaintiff must show "that the unconstitutional provision actually caused the plaintiff harm." *Decker Coal Co. v. Pehringer*, 8 F.4th 1123, 1137 (9th Cir. 2021) (declining to hold that the existence of a potentially unconstitutional removal provision alone tainted an ALJ's decision).

Plaintiff contends that because section 902(a)(3) limits the President's authority to remove the Commissioner of the SSA and Acting Commissioner, Commissioner Andrew M. Saul and Acting Commissioner Nancy A. Berryhill had no authority to delegate to the Appeals Council Officer or ALJ that adjudicated Plaintiff's claim. Doc. 14 at 11-12, 14. According to Plaintiff, the Appeals Council Officer's and ALJ's decisions therefore are constitutionally invalid because those actors exercised a power they did not lawfully possess. *Id.* at 12.

---

[10] Because the parties agree that section 902(a)(3)'s for-cause removal restriction is unconstitutional, the undersigned assumes without finding that the parties are correct. *See Spirit Airlines, Inc. v. Maizes*, 899 F.3d 1230, 1233 n.1 (11th Cir. 2018) (assuming without deciding an issue that the parties agreed on).

In *Collins v. Yellen*, the Court held that the Housing and Economic Recovery Act of 2008's for-cause restriction on the President's authority to remove the director of the Federal Housing Finance Agency violated the separation of powers. 141 S. Ct. at 1783. But the Court also held that because the director's appointment was proper under the Constitution, the director's actions were not "void *ab initio*," despite the unconstitutional for-cause limitation. *Id.* at 1787; *id.* at 1788 n.23 (noting that "the unlawfulness of [a] removal provision does not stripe [an officer] of the power to undertake the other responsibilities of his office") (citing *Seila Law LLC v. Consumer Fin. Prot. Bureau*, 140 S. Ct. 2183, 2207-11 (2020)). Turning to the present action with *Collins* in mind, it logically follows that section 902(a)(3)'s removal provision did not deprive Commissioner Saul or Acting Commissioner Berryhill of their authority and, by extension, did not deprive the Appeals Council Officer and the ALJ of authority to adjudicate Plaintiff's case.

Because section 902(a)(3)'s mere existence does not void every action taken by the Commissioner of the SSA, the Acting Commissioner of the SSA, Appeals Council Officers, and ALJs, to prevail on her argument, Plaintiff must show that section 902(a)(3)'s for-cause limitation caused her "compensable harm." *Id.* at 1788-89; *Decker Coal Co.*, 8 F.4th at 1137. In her memorandum in support of her complaint, Plaintiff essentially states that but for President Biden's assumed inability to remove Commissioner Saul as the Commissioner of the SSA, Plaintiff would have

received a favorable disability determination. Doc. 14 at 17-19. But this is pure speculation and Plaintiff offers only the statement of an unnamed "White House official" to support her speculation. *Id.* at 17-18. Courts have considered similar arguments in other cases and, not surprisingly, have rejected them. Doc. 15 at 21 n.5 (collecting 28 cases). In short, Plaintiff has failed to show that section 902(a)(3)'s for-cause limitation caused her "compensable harm." *Platt v. Comm'r of Soc. Sec.*, __ F. Supp. 3d __, 2022 WL 621974, at *6 (S.D.N.Y. 2022) (declining to remand a social security appeal because the plaintiff failed to show how section 902(a)(3)'s removal restriction "impacted the ALJ's decision to reject her appeal"). Plaintiff, therefore, is not entitled to have a different ALJ handle any rehearing of her case.

## V. CONCLUSION

For the reasons set forth above, the undersigned respectfully **RECOMMENDS** that the District Court:

1.    **REVERSE** the Commissioner's decision and **REMAND** this action to the Commissioner, pursuant to sentence four of 42 U.S.C. § 405(g);

2.    Order the Commissioner to conduct proceedings in accordance with this report and recommendation; and

3.    Direct the clerk of the court to close the case file.

At Pensacola, Florida, this 11th day of March, 2022.

/s/ *Michael J. Frank*
**Michael J. Frank**
**United States Magistrate Judge**

## <u>NOTICE TO THE PARTIES</u>

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days of the date of the report and recommendation. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u> An objecting party must serve a copy of its objections upon all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**